IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

Joseph Salehi,                    )
                                  )
              Plaintiff,          )
                                  )
v.                                )        CASE NO.  1:11-cv-1323
                                  )
Wells Fargo Bank, N.A.,           )
                                  )
              Defendant.          )

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Wells Fargo Bank, N.A.'s ("Wells Fargo Bank") Motion to Dismiss Amended Complaint.[1]  Dkt. No. 9.  This case concerns a dispute about mortgage payments between a homeowner, Plaintiff Joseph Salehi, and the servicer of his loan, Wells Fargo Home Mortgage, Inc. ("WFHMI"), which merged into Defendant Wells Fargo Bank.[2]

There are four issues before the Court.  The first issue is whether the Court should dismiss Plaintiff's breach of contract claim (Count I) where the Amended Complaint alleges that as a result of the breach of contract by WFHMI, the servicer of his loan operating under a mortgage servicing agreement with the holder of his mortgage note, Plaintiff paid $17,400.14 that he did not owe to avoid a wrongfully commenced foreclosure on his home.  The second issue is whether the court should dismiss Plaintiff's negligence claim (Count II) where the Amended Complaint alleges that as the servicer of Plaintiff's mortgage loan, WFHMI breached its duty to Plaintiff by failing to provide him an accurate statement of the amount due under the

---

[1] The title of the Amended Complaint referenced here is "First Amended Complaint."  Dkt. No. 7.
[2] The Amended Complaint alleges that around June 30, 2009, WFHMI merged into Wells Fargo Bank, which assumed all rights and liabilities of WFHMI.

mortgage note and by collecting money that he did not owe.  The third issue is whether the Court

should dismiss Plaintiff's Consumer Protection Act claim (Count III) where the Amended

Complaint alleges that WFHMI made false statements concerning Plaintiff's loan payment,

which caused Plaintiff to pay WFHMI $17,400.14 that he did not owe.  The fourth issue is

whether the Court should dismiss Plaintiff's Real Estate Settlement Act ("RESPA") claim

(Count IV) where the Amended Complaint alleges that after Plaintiff sent WFHMI a written

request for a refund, WFHMI failed to make any corrections to Plaintiff's account or to conduct

an investigation and provide Plaintiff with a written explanation within sixty (60) days after

receiving the letter.

      The Court grants Defendant's Motion to Dismiss Counts I, II, and III of the Amended

Complaint and denies Defendant's Motion to Dismiss Count IV of the Amended Complaint.

The Court grants Defendant's Motion to Dismiss as to Count I because Plaintiff fails to allege

that there was a legally enforceable obligation of WFHMI to Plaintiff.  The Court grants

Defendant's Motion to Dismiss as to Count II because Plaintiff fails to identify a common law

duty owed by WFHMI, a loan servicer, to Plaintiff, a borrower.  The Court grants Defendant's

Motion to Dismiss as to Count III because Plaintiff fails to allege that WFHMI's alleged false

statements were made in connection with a consumer transaction as defined under the Virginia

Consumer Protection Act ("VCPA").  The Court denies Defendant's Motion to Dismiss as to

Count IV because the Amended Complaint contains sufficient allegations as to the elements of a

RESPA claim.

## I.   BACKGROUND

In January of 2006, Plaintiff took out a home loan in the amount of $345,000 from First National Bank of Arizona and executed an "Interest First Note" ("Note") repayable in installments of $1,976.56 each month for the first ten years of the loan and then $2,648.96 each month for the remaining twenty years of the Note. The Note was secured by a deed of trust encumbering against Plaintiff's residence. Under the deed of trust, the trustee has the power of sale, and if Plaintiff fails to make the payments due under the Note or otherwise defaults on the Note, the lender or noteholder can instruct the trustee to exercise the power of sale.

Sometime after January 2006, the Note was transferred to Nomura Asset Acceptance Corporation Mortgage Pass Through Certificates Series 2006-AFI ("Nomura"). WFHMI was the servicer of Plaintiff's loan. The Amended Complaint alleges that pursuant to a mortgage servicing agreement with Nomura, WFHMI (1) received "[a]ll rights of the noteholder and lender under the Note" including enforcing the Note against the borrower and collecting all payments for the Note; (2) "assumed all obligations of the noteholder to Plaintiff" including providing monthly statements to Plaintiff for amounts due on the Note and maintaining an accurate record as to the amounts due; and (3) had the "right to instruct the trustee under the deed of trust secured by Plaintiff's residence to institute foreclosure proceedings." Am. Compl. ¶¶ 5, 6, 9. The trustee of the deed of trust was Samuel I. White, P.C. ("White"). In May 2008, White sent Plaintiff a letter stating that it could conduct a trustee's sale of Plaintiff's residence because default had occurred in payment of the Note. Plaintiff contacted White's office in May 2008 and was told that he owed $17,400.14 on the loan and that he needed to pay that amount to avoid foreclosure on his house. Feeling that he "had no alternative but to pay the sum demanded," on

May 22, 2008, Plaintiff paid White $17,400.14 in the form of a cashier's check. Am. Compl. ¶ 21.

The Amended Complaint alleges that in August 2008, Plaintiff first learned that the $17,400.14 he paid in May 2008 included payments due under the Note in January through April of 2008. It further alleges that prior to May 2008, Plaintiff made all payments on his loan; therefore, he did not owe WFHMI any monthly payments or other amounts included in the $17,400.14. Thus, according to Plaintiff, he paid twice for the months of January through April 2008. Additionally, the Amended Complaint alleges that since August 2008, Plaintiff had inquired White, WFHMI and Wells Fargo Bank as to why he was required to make the same payments twice. It is alleged that the only explanation he received was a statement from Mr. Syed Mohsin Reza[3] that "the lender can apply payments any way that it wants and that the lender just needs to explain what it did." Am. Compl. ¶ 26.

Furthermore, the Amended Complaint alleges that "on or about March 8, 2009, Plaintiff sent to WFHMI (in the manner designated by WFHMI for sending qualified written requests) [a] letter." Am. Compl. ¶ 56. In the letter, Plaintiff stated that he was not in arrears and he had overpaid his account by $17,400.14 to stop the wrongfully commenced foreclosure on his home. Am. Compl. Ex. B. Plaintiff requested a refund of the overpayment and a correction to his credit report. Am. Compl. Ex. B. It is alleged that "WFHMI failed within 60 days after receiving the letter . . . to make any corrections to the account of Plaintiff or to conduct an investigation and provide Plaintiff with a written explanation or clarification." Am. Compl. ¶ 59.

On April 22, 2010, Plaintiff filed an action against Wells Fargo Bank and White in Fairfax County Circuit Court seeking recovery from breach of contract, actual fraud, constructive fraud, and money had and received. By an order dated January 31, 2011, the Fairfax Circuit

---

[3] It is not clear with which entity Mr. Reza was affiliated.

Court overruled Wells Fargo Bank and White's demurrer as to the breach of contract claim but sustained their demurrer on the other three claims. On April 13, 2011, the Circuit Court entered an order dismissing the case pursuant to Plaintiff's request for a nonsuit. Then, on October 13, 2011, Plaintiff filed the present action against Wells Fargo Bank in the same court. After the case was removed to this Court, Plaintiff amended the Complaint and the Amended Complaint contains four counts:

> Count I - Breach of Contract;
> Count II - Negligence;
> Count III - Violation of Consumer Protection Act; and
> Count IV - Violation of Real Estate Settlement Procedures Act.

The case is now before the Court on Defendant's Motion to Dismiss Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## II.   STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) should be granted unless an adequately stated claim is "supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561 (2007) (internal citations omitted); *see* FED. R. CIV. P. 12(b)(6). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009) (quoting *Twombly*, 550 U.S. at 555). A complaint is also insufficient if it relies upon "naked assertions devoid of further factual enhancement." *Iqbal*, 556 U.S. at 678 (internal citations omitted).

To survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth "a claim for relief that is plausible on its face." *Id.*; *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference

5

that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Twombly*, 555 U.S. at 556.

In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. *Mylan Lab., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In addition to the complaint, the court may also examine "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007). "Conclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995). Because the central purpose of the complaint is to provide the defendant "fair notice of what the plaintiffs' claim is and the grounds upon which it rests," the plaintiffs' legal allegations must be supported by some factual basis sufficient to allow the defendant to prepare a fair response. *Twombly*, 550 U.S. at 556 n.3.

### III.   ANALYSIS

#### A.  Count I: Breach of Contract

The Court grants Defendant's Motion to Dismiss as to the breach of contract claim, Count I, because Plaintiff fails to allege that there was a legally enforceable obligation of WFHMI to Plaintiff. The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation. *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004). "When a party assumes the contract, or undertaking, of another he makes it his contract." *Econ. Water Heating Corp. v. Dillon Supply Co.*, 159 S.E. 78, 81 (Va. 1931). Additionally, an assignee of a contract obtains his rights from the assignor and, thus,

6

"'stands in the shoes' of the assignor and acquires the same rights and liabilities as if he had been an original party to the contract." *Pollard & Bagby, Inc. v. Pierce Arrow, L.L.C., III.*, 521 S.E.2d 761, 763 (Va. 1999).

Here, the Amended Complaint fails to specify, under contract law, a legally enforceable obligation of WFHMI to Plaintiff. The Amended Complaint alleges that Plaintiff and the First National Bank of Arizona were the parties to the Note and the deed of trust. It then alleges that the Note was transferred to Nomura, and Nomura issued mortgage backed securities, under which the holder of the security has the right to receive payments. The Amended Complaint also alleges that Nomura and WFHMI entered into a mortgage servicing agreement. But it never alleges that there is a direct contractual relationship between Plaintiff and WFHMI.

Nonetheless, the Amended Complaint generally alleges that under the mortgage servicing agreement, WFHMI "stood in the shoes of Nomura inasmuch as it acquired all the rights of the holder of the Note and assumed all the obligations of the holder." Am. Compl. ¶ 35. Yet, the Amended Complaint fails to allege any terms of the servicing agreement that placed WFHMI "in the shoes of Nomura." Nor does it mention any specific terms of the servicing agreement that created a legally enforceable obligation that WFHMI owes to Plaintiff, who is not a party to the agreement. It follows that WFHMI may owe legally enforceable obligations only to Nomura, the other party to the mortgage servicing agreement, but not to Plaintiff.

Plaintiff argues that when WFHMI assumed the duties of the noteholder and acquired the right of the noteholder, WFHMI became bound by a contractual obligation to plaintiff just as if it had been a party to the contract with Plaintiff. This argument is misplaced. Plaintiff seems to equate the alleged transferring of rights of the noteholder to WFHMI and WFHMI's assuming of all obligations of the noteholder under the mortgage servicing agreement to WFHMI's assuming

of the contract (*i.e.*, the Note). However, Plaintiff provides no legal authority for that proposition. Therefore, the Court grants Defendant's Motion to Dismiss as to Count I of the Amended Complaint.

### B. Count II: Negligence

The Court grants Defendant's Motion to Dismiss as to the negligence claim, Count II, because Plaintiff fails to identify a common law duty owed by a loan servicer to a borrower. To establish a claim for negligence under Virginia law, the plaintiff must satisfy three elements: (1) "the identification of a legal duty of the defendant to the plaintiff;" (2) "a breach of that duty;" and (3) "injury to the plaintiff proximately caused by the breach." *Talley v. Danek Med., Inc.*, 179 F.3d 154, 157 (4th Cir. 1999). A "duty tortiously or negligently breached must be a common law duty, not one existing between the parties solely by virtue of the contract." *Richmond Metro. Auth. v. McDevitt St. Bovis, Inc.*, 507 S.E.2d 344, 347 (Va. 1998) (citation and internal quotation marks omitted).

The Amended Complaint alleges that "WFHMI, as the servicer of Plaintiff's loan . . . owed a duty to Plaintiff to provide an accurate statement of the amount due under the Note and deed of trust and to avoid instituting foreclosure proceedings to collect any amount that Plaintiff did not owe pursuant to the terms of those documents." Am. Compl. ¶ 40. However, Plaintiff fails to identify a binding authority establishing that this alleged duty that a loan servicer owes to a borrower is legally cognizable in Virginia. *See* Pl.'s Opp'n 11 (citing cases in other districts purportedly concerning a common law duty from a loan servicer to a borrower). Therefore, the Court grants Defendant's Motion to Dismiss as to Count II of the Amended Complaint.[4]

---

[4] Additionally, Plaintiff argues that "Defendant can be held liable for wrongfully initiating foreclosure as the agent of the lender when the lender would have had no right under the contract to do so." Pl.'s Opp'n 12. However, this argument is not persuasive because the Amended Complaint contains no reference to any agency relationship.

C. Count III: Violation of Consumer Protection Act

The Court grants Defendant's Motion to Dismiss as to Count III because Plaintiff fails to state a claim under the VCPA as the Amended Complaint does not allege that WFHMI's false statements were made in connection with a consumer transaction as defined by the VCPA. The Amended Complaint does not specify the statutory basis for Count III. It seems that Plaintiff relies on Section 59.1-200(A)(14) of the Virginia Code, which provides that it is unlawful for a supplier to employ any "deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." *See* Pl.'s Opp'n 12–13; VA. CODE ANN. § 59.1-200(A)(14) (2011). To properly state a cause of action under the VCPA, Plaintiff must allege (1) fraud, (2) by a supplier, (3) in a consumer transaction. *Id.*; *Enomoto v. Space Adventures, Ltd.*, 624 F. Supp. 2d 443, 456 (E.D. Va. 2009). "Supplier" means "a seller, lessor or licensor who advertises, solicits or engages in consumer transactions, or a manufacturer, distributor or licensor who advertises and sells, leases or licenses goods or services to be resold, leased or sublicensed by other persons in consumer transactions." VA. CODE ANN. § 59.1-198 (2011). "Consumer transaction" means "[t]he advertisement, sale, lease, license or offering for sale, lease or license, of goods or services to be used primarily for personal, family or household purposes." *Id.* "Goods" means "all real, personal or mixed property, tangible or intangible." *Id.* "Services" includes "work performed in the business or occupation of the supplier." *Id.*

In this case, the Amended Complaint fails to allege the false statements to Plaintiff were made in connection with a consumer transaction. The Amended Complaint alleges that WFHMI, a loan servicer, sent consumers statements of the amount due on the loan and received loan payments from those consumers. It is alleged that WFHMI made to Plaintiff, through White, false statements about the status of his loan. Nonetheless, it does not allege WFHMI's false

9

statements to Plaintiff is related to specific transactions where WFHMI advertises, sells, leases,

licenses or offers for sale, lease or license its goods or service as required by Section 59.1-198 of

the Virginia Code.  Therefore, the Court grants Defendant's Motion to Dismiss as to Count III of

the Amended Complaint.

D. Count IV: Violation of Real Estate Settlement Procedures Act

The Court denies Defendant's Motion to Dismiss as to the claim under the RESPA,

Count IV, because the Amended Complaint contains sufficient allegations as to all the elements

of a RESPA claim.  RESPA provides:

> If any servicer of a federally related mortgage loan receives a qualified written
> request from the borrower (or an agent of the borrower) for information relating
> to the servicing of such loan, the servicer shall provide a written response
> acknowledging receipt of the correspondence within 20 days (excluding legal
> public holidays, Saturdays, and Sundays) unless the action requested is taken
> within such period.

12 U.S.C. § 2605(e)(1)(A) (2011).  The statute defines "qualified written request" as:

> [A] written correspondence ... that (i) includes, or otherwise enables the servicer
> to identify, the name and account of the borrower; and (ii) includes a statement of
> the reasons for the belief of the borrower, to the extent applicable, that the account
> is in error or provides sufficient detail to the servicer regarding other information
> sought by the borrower.

12 U.S.C. § 2605(e)(1)(B) (2011).  Upon receiving a "qualified written request," the statute

directs a loan servicer to make corrections to the borrower's account, or to conduct an

investigation of the borrower's account within 60 days. 12 U.S.C. § 2605(e)(2)(A)–(C) (2011).

The investigation must result in a statement of the reasons for which the servicer believes the

account of the borrower is correct, the production of information requested by the borrower, or

an explanation of why the information requested is unavailable.  12 U.S.C. § 2605(e)(2)(B)–(C)

(2011).  Additionally, the loan servicer must provide "the name and telephone number of an

10

individual employed by, or the office or department of, the servicer who can provide assistance to the borrower." 12 U.S.C. § 2605(e)(2)(B)(ii) (2011).  Moreover, RESPA provides for relief in the form of "any actual damages" arising from a violation of the statute, as well as "any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000."  12 U.S.C. § 2605(f)(1)(A)–(B) (2011).

Here, the Amended Complaint alleges that on or about March 8, 2009, Plaintiff sent to WFHMI a letter detailing the mortgage payments he had made for the period of January 2008 to May 2008 and his $17,400.14 payment.  Am. Compl. Ex. B.  The letter requested a refund of the overpayment and wrongfully charged fees and costs.  Am. Compl. Ex. B.  The Amended Complaint alleges that Defendant failed "to make any corrections to the account of Plaintiff or to conduct an investigation and provide Plaintiff with a written explanation or clarification" within sixty days after receiving the letter.  Am. Compl. ¶ 59.  It further alleges that "[h]ad WFHMI conducted an investigation, it would have discovered that it had failed to credit the payments that Plaintiff made on the account, and Plaintiff would have received a refund or other credit for those payments that he was not obligated to make."  Am. Compl. ¶ 60.

Plaintiff's March 8, 2009 letter is a "qualified written request" because it is a written correspondence that includes information that allows the servicer, WFHMI, to identify the name and account of Plaintiff and it also details Plaintiff's belief that the account is in error.  Am. Compl. Ex. B.  Additionally, the Amended Complaint alleges that WFHMI failed to act within the sixty (60) days of receipt of the letter that RESPA requires.  Moreover, contrary to Defendant's argument that Plaintiff fails to adequately plead actual loss, the Amended Complaint alleges that Plaintiff suffered actual damages arising from the violation.  Specifically, it alleges

11

that had WFHMI investigated the matter, "it would have discovered that it had failed to credit the payments that Plaintiff made on the account," and Plaintiff would have received a refund. Am. Compl. ¶ 60. Therefore, the Amended Complaint contains sufficient allegations with respect to Count IV.

## IV.    CONCLUSION

For the foregoing reasons, it is hereby

ORDERED that Defendant's Motion to Dismiss as to Counts I, II, and III of the Amended Complaint is GRANTED.  Counts I, II and III are DISMISSED WITH PREJUDICE. It is further,

ORDERED that Defendant's Motion to Dismiss as to Count IV of the Amended Complaint is DENIED.

The Clerk is directed to forward a copy of this Order to counsel of record.

ENTERED this __ day of June, 2012.

Alexandria, Virginia

6/__ /12

/s/
Gerald Bruce Lee
United States District Judge

12